**No. 23-35507**

_____

_____

IN THE UNITED STATES CIRCUIT COURT OF APPEALS
FOR THE NINTH CIRCUIT

———————————————

**UNITED STATES OF AMERICA, EX REL. BNSF RAILWAY COMPANY,**

Plaintiff – Appellee,

v.

**CENTER FOR ASBESTOS RELATED DISEASE, INC.,**

Defendant – Appellant.

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA

———————————————

**APPELLANT'S MOTION FOR JUDICIAL NOTICE**

———————————————

Timothy Bechtold
Bechtold Law Firm, PLLC
P.O. Box 7051
Missoula, MT 59807
406-721-1435
tim@bechtoldlaw.net
*Attorney for Defendant – Appellant CARD*

Appellant Center for Asbestosis Related Disease, Inc. (CARD) now moves this Court to take judicial notice of the Social Security Administration's (SSA) decision to grant Medicare coverage to a person from Libby, Montana, who appealed a denial of Medicare coverage. The appeal and SSA's decision are attached here with personal information redacted.

BNSF Railway is opposed to this motion and represents it position to CARD's motion as follows:

> The exhibit proposed is irrelevant, immaterial, more prejudicial than probative, is outside the period of conduct charged, lacks foundation, authenticity, contains hearsay and BNSF had no means to test the exhibit's veracity at deposition, hearing or trial. That opportunity has long passed and CARD did not raise this as an exhibit in its opening brief.

> Furthermore, BNSF objects to this exhibit as inappropriate as material submittable for judicial notice under FRE 201, as the fact of the matter (this exhibit) is not readily known within the trial court's territorial jurisdiction; and the fact of the matter cannot be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

> Finally, BNSF objects because this exhibit was never introduced by CARD prior to trial or prior to the appeal and is not part of the underlying record.

**Discussion**

"Judicial notice is appropriate for records and reports of administrative bodies." *United States v. 14.02 Acres of Land More or Less in Fresno County*, 530 F.3d 883, 894 (9th Cir. 2008) (citations omitted). *See also Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (a court may take judicial notice of

matters of public record); *Wible v. Aetna Life Ins. Co.*, 375 F.Supp.2d 956, 965 (C.D. Cal. 2005)(A court may take judicial notice of records and reports of administrative bodies and matters of public record). FRE 201(b) provides that a court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FRE 201(c)(2) provides that a court "must take judicial notice if a party requests it and the court is supplied with the necessary information."

A significant issue in this appeal is whether CARD's historical practice of submitting persons with exposure history in Libby, Montana to SSA for Medicare coverage based solely upon a determination by an "outside read" or a "B-read" of an asbestos-related condition is a violation of the False Claims Act. Here, CARD asks the Court to take judicial notice of SSA public record documents in which, after trial in this matter, SSA granted Medicare coverage to a person based solely upon a determination by an "outside read" of an asbestos-related condition.

On May 30, 2023, prior to the trial in this matter, CARD submitted an Environmental Health Hazards Checklist (EHH) to SSA for a person whose CT of the chest was screened by an outside reader who determined the person has asbestosis. *See* JN16. Based upon CARD's review of the CT scan, CARD's

providers did not determine that the person had an asbestos-related condition. Thus CARD notated the EHH Checklist to indicate that the determination of asbestosis was determined by "outside read only" and noted in the Date of Diagnosis box "5/9/2023(DATE OF OUTSIDE READ)." *See* JN16. On June 14, 2023, the Kalispell SSA office determined that the person did not qualify for Medicare. *See* JN14-15. Trial in this matter concluded on June 28, 2023.

On July 31, 2023, the person made a timely appeal of the initial determination, arguing that the person qualified for Medicare "according to the ACA." JN4. On November 25, 2023, SSA ruled that, "You are entitled to Medicare because you are medically affected from exposure to a public health hazard in an area subject to an emergency declaration," and enrolled the person in Medicare. *See* JN2.

CARD filed its opening brief in this matter on November 29, 2023. On December 18, 2023, the person informed CARD's counsel that SSA had granted the appeal and enrolled the person in Medicare coverage even though the asbestosis had been determined solely by an outside reader, and the person faxed the appeal and determination letter to CARD's counsel.

After requesting additional time, BNSF filed its response brief on March 29, 2024. CARD now files its reply brief concurrent with this motion for judicial notice. CARD could not have filed this motion at the time of its opening brief

because it was not in possession of the SSA determination at that time and was unaware that SSA had made the determination.

Here, this Court should take judicial notice of the administrative ruling of the SSA granting the person Medicare coverage when the person had a determination of asbestosis solely by an outside reader because the SSA determination is a matter of public record, and the determination contains facts not subject to reasonable dispute that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *See* FRE 201.

Respectfully submitted May 20, 2024.


/s/Timothy M. Bechtold

Attorney for Appellant CARD

# *Fax*

Date: 12/18/2023

To: Bechtold Law Firm PLLC

Fax #: 406-830-3085

From: _____

Phone: (406) _____ Fax #: (406) _____

RE: Medicare, Appeal

DISCLAIMER: The information contained in this facsimile message is intended for the sole confidential use of the designated recipients and may contain confidential information. If you have received this information in error, any review, dissemination, distribution or copying of this information is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and destroy the original message. Thank you.

**JN1**

M1

# Social Security Administration
## Retirement, Survivors, and Disability Insurance
Notice of Award

Northeastern Program
Service Center
1 Jamaica Center Plaza
Jamaica, New York 11432-3898
Date: November 25, 2023
BNC#: 23M1809E10113-T

0001572 00001577     1 MB  0.561  1120MACTR1PB T8 P1



TROY MT  59935-

You are entitled to Medicare because you are medically affected
from exposure to a public health hazard in an area subject to an
emergency declaration.

**Information About Medicare**

You are entitled to hospital and medical insurance under
Medicare beginning June 2023.

Hospital insurance will pay most hospital bills and certain
post-hospital expenses.  Medical insurance will help pay much
of the medical expenses incurred for physicians and other
medical services.  This notice shows whether you are entitled
to hospital insurance only, medical insurance only, or both
hospital and medical insurance.  Benefits are payable if
covered services were rendered on or after the entitlement date
shown.  You will receive by mail a health insurance card and a
booklet explaining how to use the card, what services are
covered, and the methods of claiming benefits for covered
services.  If you are planning changes in any other hospital or
medical insurance you now have, remember that Social Security
health insurance coverage will be effective with the dates
shown on this notice.

If you need help with medical expenses before your health
insurance coverage begins, or if you need aid in meeting
medical expenses not covered by your health insurance, you may
want to get in touch with the nearest social services office to
see whether you are eligible under a program of medical
assistance.

Notify any Social Security office immediately if you change
your address so that your health insurance card and any claims
or informational material may reach you promptly.

Your monthly premium for Medicare Part B (medical insurance) is
$164.90 beginning June 2023.

SEE NEXT PAGE

JN2

Always give your Social Security claim number on any letter or notice you send about your claim.

KEEP AS A PERMANENT RECORD--DO NOT DESTROY

## Do You Think We Are Wrong?

If you do not agree with this decision, you have the right to appeal. We will review your case and look at any new facts you have. A person who did not make the first decision will decide your case. We will review the parts of the decision that you think are wrong and correct any mistakes. We will make a decision that may or may not be in your favor. 

- You have 60 days to ask for an appeal.

- The 60 days start the day after you receive this letter. We assume you received this letter 5 days after the date on it unless you show us that you did not receive it within the 5-day period.

- You must have a good reason for waiting more than 60 days to ask for an appeal.

- You must ask for an appeal in writing. Please use our "Request for Reconsideration" form, SSA-561-U2. You may go to our website at www.ssa.gov/forms/ to locate the form. You can also contact us to request the form, or if you need help filling out the form.

## If You Want Help With Your Appeal

You may choose to have a representative help you. We will work with this person just as we would work with you. If you decide to have a representative, you should find one quickly so that person can start preparing your case.

Many representatives charge a fee only if you receive benefits. Others may represent you for free. Usually, your representative may not charge a fee unless we approve it. Your local Social Security office can give you a list of groups that can help you find a representative.

If you get a representative, you or that person must notify us in writing. You may use our Form SSA-1696 "Appointment of Representative." Any local Social Security office can give you this form.

SEE NEXT PAGE

**JN3**

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

OMB Exempt

# MEDICARE REDETERMINATION REQUEST FORM — 1st LEVEL OF APPEAL

Beneficiary's name *(First, Middle, Last)*

| Medicare number | Item or service you wish to appeal |
| --- | --- |
| | MEDICARE HI |
| Date the service or item was received *(mm/dd/yyyy)* | Date of the initial determination notice *(mm/dd/yyyy) (please include a copy of the notice with this request)* 6/14/2023 |

If you received your initial determination notice more than 120 days ago, include your reason for the late filing:

| Name of the Medicare contractor that made the determination *(not required)* | Does this appeal involve an overpayment? *(for providers and suppliers only)* |
| --- | --- |
| SSA | ☐ Yes ☒ No |

I do not agree with the determination decision on my claim because:

i have a positive bread interpretation identifying parenchymal related abnormalities that qualify me for Medicare HI according to the ACA. Additionally, i meet yin Medical evidence requirements + exposure to an environmental health hazzard, Libby Amphibole asbestos.

Additional information Medicare should consider:

Please See Attached documents

| ☐ I have evidence to submit. Please attach the evidence to this form or attach a statement explaining what you intend to submit and when you intend to submit it. You may also submit additional evidence at a later time, but all evidence must be received prior to the issuance of the redetermination. | ☐ I do not have evidence to submit. |
| --- | --- |

| Person appealing: ☐ Beneficiary ☐ Provider/Supplier ☐ Representative | Email of person appealing *(optional)* |
| --- | --- |

Name of person appealing *(First, Middle, Last)*

7/27/2023

Street address of person appealing

| City | State | Zip code |
| --- | --- | --- |
| | MT | 59935 |

| Telephone number of person appealing *(include area code)* | Date of appeal *(mm/dd/yyyy) (optional)* 7/31/2023 |
| --- | --- |

Privacy Act Statement: The legal authority for the collection of information on this form is authorized by section 1869 (a)(3) of the Social Security Act. The information provided will be used to further document your appeal. Submission of the information requested on this form is voluntary, but failure to provide all or any part of the requested information may affect the determination of your appeal. Information you furnish on this form may be disclosed by the Centers for Medicare & Medicaid Services to another person or government agency only with respect to the Medicare Program and to comply with Federal laws requiring or permitting the disclosure of information or the exchange of information between the Department of Health and Human Services and other agencies. Additional information about these disclosures can be found in the system of records notice for system no. 09-70-0566, as amended, available at 83 Fed. Reg. 6591 (2/14/2018) or at https://www.hhs.gov/foia/privacy/sorns/cms-sorns.html.

Form CMS-20027 (01/20)

1 of 16 (not including JN4

**Clinical diagnosis of non-malignant pulmonary asbestos related disease**

In order for CARD to make a clinical diagnosis of asbestos related disease, all three ATS 2004 criteria must be met. These criteria are listed below along with a description of how the assessment is conducted.

1) Evidence of causation by asbestos
   a. An extensive history is taken for all CARD patients. This is not documented in the provider's dictation but it is documented in the patient's chart. Histories include occupational, environmental, family history, and past medical history.
   b. There must be some plausible exposure history for a diagnosis of ARD to be considered. This is confirmed based on the eligibility criteria for screening participation. Patients had to spend at least six months total in the area for sufficient potential exposure, and it had to have been at least 10 years ago for sufficient potential latency. (latency is the time from exposure to disease which can be 10-40 years)
2) Evidence of structural pathology as evidenced by changes on CT of the chest consistent with asbestos related disease (or pathology if available – rare)
   a. Pleural thickening or pleural plaque identified by screening physician
   b. Signs of Interstitial fibrosis (asbestosis), particularly but not exclusively, in a subpleural distribution
      i. Reticular changes, interlobular lines, subpleural lines, parenchyma bands, ground glass changes, honeycombing
3) Exclusion of alternative plausible causes for the changes – if changes are found, these are reviewed with the screening participant (If not done during initial history: b-d are especially important if findings are unilateral). Compare prior CT images if available such as with re-screeners
   a. Other exposures: smoking, other particulates like coal dust or silicates, military
   b. Previous chest surgery or chest trauma
   c. History of radiation to the chest or surrounding area
   d. Recent or chronic infection
   e. Medications that could cause fibrosis

Lack of these alternative plausible causes does not always get documented in the provider's note however if there is suspicion of an alternate cause then CARD's medical providers do not diagnose and have the patient come back and rescreen in 1 year.

These criteria identify the presence of disease. Non-malignant pulmonary asbestos related disease, like other chronic diseases such as hypertension, hyperlipidemia, and diabetes, falls on a continuum and can be progressive in many cases. Baseline physical exam (pulse oximetry; auscultation for rales, rhonchi, wheezing, or altered breathing patterns), pulmonary function on spirometry or complete pulmonary function test, or 6 Minute Walk testing all help to develop a baseline of disease if there is a diagnosis or a baseline prior to identifiable disease onset. We recommend rescreening to those with an exposure history who may be negative because of the latency period associated with asbestos related disease. Recognized symptoms may or may not be present at diagnosis, although there may still be changes in functional testing before the patient becomes aware. Early identification of asbestos related disease allows for treatment including regular monitoring of symptom development, changes in pulmonary function, and advancement of findings on imaging. Changes, when caught early, can be addressed with lifestyle modifications, oxygen, medication if indicated, or therapeutic intervention as necessary to improve quality of life and extend longevity when possible.

*Please see page two for posture outside read description*

2 OF 16

**JN5**

CARD fills out an EHH checklist, on behalf of the Social Security Administration (SSA), for individuals who receive a clinical ARD diagnosis and who, after receiving benefits education, choose to sign up. Filling out the EHH form facilitates access to Medicare (if under age 65) and/or the Medicare Pilot Program for Asbestos Related Disease (MPPARD) depending on what county the patient lives in. Completed EHH documents are faxed to Social Security Administration with the release of information signed by the patient and proof of presence if required. Patients then need to call Social Security Administration to finalize their application process. Sometimes, if a patient calls the SSA instead of CARD, the request for an EHH will come from SSA rather than the patient but the process is the same otherwise.

### Non-clinical diagnosis of non-malignant pulmonary asbestos related disease

CARD does not consider a positive outside read a clinical diagnosis; however, the ACA defines a positive screening in this way, as does SSA's EHH checklist and CARD's grant. A positive screening outcome is eligible for benefits based on these three documents as well, and the EHH checklist does use the word "diagnosis" therefore CARD calls this situation a non-clinical diagnosis. It is not unique or atypical for a non-clinical diagnosis to be used for the purposes of compensation. In fact, the NIOSH B-read program is used to determine the provision of compensation to other groups exposed to other inhaled particulates. "The original objective of the "B" reader examination was to identify physicians who were qualified to serve in national pneumoconiosis programs, particularly regarding epidemiological research and compensation of coal miners." There is a history of OSHA also considering a positive B-read diagnostic for its medical surveillance programs, and screening conducted by the State of Montana from 2003- 2008 related to Libby asbestos exposure also considered a positive B-read diagnostic. For these programs, there was no opportunity for a medical provider to make a clinical diagnosis based on accepted ATS criteria. CARD's screening program is innovative in combining both methods of diagnosis.

It is typical practice for B-reading to be done by NIOSH-certified readers without any knowledge of the patients' clinical information. It is the experience of B-readers that readings for both pleural and parenchymal disease may be positive without symptoms or clinical findings; these constitute evidence of disease.

When filling out an EHH form for an outside read only, CARD staff are trained to make sure that they highlight, circle, or otherwise note that it is an outside read only to underscore that the patient does not have a clinical diagnosis. This innovation is also obvious in how CARD uses not only B-reading of CXRs, but also reading of chest CT scans by radiologists experienced in asbestos related disease. Currently, CT scans of the chest are considered the standard of practice for diagnosis of asbestos related disease.

According to the Social Security Administration's EHH Checklist, section 2, labeled "Step 2" is intended to "Identify the asbestos-related condition(s) and its date of diagnosis." It goes on to list the "impairment" and "Minimum Medical Evidence Required." Minimum medical evidence for both the asbestosis and pleural thickening pleural/plaques impairment lines state "Interpretation by a B reader qualified physician of a plain chest x-ray or interpretation of computed tomographic radiograph of the chest by a qualified physician. This wording clearly defines qualified physician for CXR reading, but not for CT reading. CARD's grant notice of funding opportunity (NOFO) defines qualified physician on page 7 of 45, under section e i, which states "Interpretation of computed tomography of the chest by a qualified physician ( a physician with board certification in radiology or pulmonary medicine or an

interpretation provided by the Center for Asbestos –Related Diseases (CARD) Clinic for patients in the Libby area). For this reason, and because CT scans are now the standard of practice, CARD only diagnoses clinical ARD based on our provider's CT reads, not from CXRs.

Public Law 111-148, the Patient Protection and Affordable Care Act, was signed into law on March 23, 2010. Sec. 10323 Medicare Coverage for Individuals Exposed to Environmental Health Hazards inserted section 1881A and Sec. 2009 into Title XVIII of the Social Security Act. Both of these sections define the programs and include confirmation that a positive B-read or outside CT read is considered qualifying.

The EHH form was provided to CARD by Social Security Administration on May 20, 2010. The process for filling them out was developed in conjunction with Social Security administration representatives at the time EHH form use began in order to provide patients with Medicare and Pilot Program benefits.

### References

1. Diagnosis and Initial Management of Nonmalignant Diseases Related to Asbestos. (2004). *American Journal of Respiratory and Critical Care Medicine, 170*(6), 691–715. https://doi.org/10.1164/rccm.200310-1436st
2. Wikipedia contributors. (2021). B reader. *Wikipedia*. https://en.wikipedia.org/wiki/B_reader

### Attachments

1. ~~Email from Mary Lisa Lewandowski at SSA providing Tanis Hernandez with the EHH form (see #1)~~
2. ~~The EHH form from #1 above~~
3. Public Law 111-148 Sec. 10323
4. ~~CDC-RFA-TS19-1902 Funding opportunity announcement for CARD's current grant, which started in 2019.~~

JN7

124 STAT. 954        PUBLIC LAW 111-148—MAR. 23, 2010

psychiatric units on the Internet website of the Centers for Medicare & Medicaid Services.".

42 USC 1395aaa.

(b) CONFORMING AMENDMENT.—Section 1890(b)(7)(B)(i)(I) of the Social Security Act, as added by section 3014, is amended by inserting "1886(s)(4)(D)," after "1886(o)(2),".

SEC. 10324. MEDICARE COVERAGE FOR INDIVIDUALS EXPOSED TO ENVIRONMENTAL HEALTH HAZARDS.

(a) IN GENERAL.—Title XVIII of the Social Security Act (42 U.S.C. 1395 et seq.) is amended by inserting after section 1881 the following new section:

42 USC 1395rr-1.

"SEC. 1881A. MEDICARE COVERAGE FOR INDIVIDUALS EXPOSED TO ENVIRONMENTAL HEALTH HAZARDS.

"(a) DEEMING OF INDIVIDUALS AS ELIGIBLE FOR MEDICARE BENEFITS.—

"(1) IN GENERAL.—For purposes of eligibility for benefits under this title, an individual determined under subsection (c) to be an environmental exposure affected individual described in subsection (e)(2) shall be deemed to meet the conditions specified in section 226(a).

"(2) DISCRETIONARY DEEMING.—For purposes of eligibility for benefits under this title, the Secretary may deem an individual determined under subsection (c) to be an environmental exposure affected individual described in subsection (e)(3) to meet the conditions specified in section 226(a).

"(3) EFFECTIVE DATE OF COVERAGE.—An individual who is deemed eligible for benefits under this title under paragraph (1) or (2) shall be—

"(A) entitled to benefits under the program under Part A as of the date of such deeming; and

"(B) eligible to enroll in the program under Part B beginning with the month in which such deeming occurs.

"(b) PILOT PROGRAM FOR CARE OF CERTAIN INDIVIDUALS RESIDING IN EMERGENCY DECLARATION AREAS.—

"(1) PROGRAM; PURPOSE.—

"(A) PRIMARY PILOT PROGRAM.—The Secretary shall establish a pilot program in accordance with this subsection to provide innovative approaches to furnishing comprehensive, coordinated, and cost-effective care under this title to individuals described in paragraph (2)(A).

"(B) OPTIONAL PILOT PROGRAMS.—The Secretary may establish a separate pilot program, in accordance with this subsection, with respect to each geographic area subject to an emergency declaration (other than the declaration of June 17, 2009), in order to furnish such comprehensive, coordinated and cost-effective care to individuals described in subparagraph (2)(B) who reside in each such area.

"(2) INDIVIDUAL DESCRIBED.—For purposes of paragraph (1), an individual described in this paragraph is an individual who enrolls in part B, submits to the Secretary an application to participate in the applicable pilot program under this subsection, and—

"(A) is an environmental exposure affected individual described in subsection (e)(2) who resides in or around the geographic area subject to an emergency declaration made as of June 17, 2009; or

PUBLIC LAW 111–148—MAR. 23, 2010     124 STAT. 955

"(B) is an environmental exposure affected individual described in subsection (e)(3) who—

"(i) is deemed under subsection (a)(2); and

"(ii) meets such other criteria or conditions for participation in a pilot program under paragraph (1)(B) as the Secretary specifies.

"(3) FLEXIBLE BENEFITS AND SERVICES.—A pilot program under this subsection may provide for the furnishing of benefits, items, or services not otherwise covered or authorized under this title, if the Secretary determines that furnishing such benefits, items, or services will further the purposes of such pilot program (as described in paragraph (1)).

"(4) INNOVATIVE REIMBURSEMENT METHODOLOGIES.—For purposes of the pilot program under this subsection, the Secretary—

"(A) shall develop and implement appropriate methodologies to reimburse providers for furnishing benefits, items, or services for which payment is not otherwise covered or authorized under this title, if such benefits, items, or services are furnished pursuant to paragraph (3); and

"(B) may develop and implement innovative approaches to reimbursing providers for any benefits, items, or services furnished under this subsection.

"(5) LIMITATION.—Consistent with section 1862(b), no payment shall be made under the pilot program under this subsection with respect to benefits, items, or services furnished to an environmental exposure affected individual (as defined in subsection (e)) to the extent that such individual is eligible to receive such benefits, items, or services through any other public or private benefits plan or legal agreement.

"(6) WAIVER AUTHORITY.—The Secretary may waive such provisions of this title and title XI as are necessary to carry out pilot programs under this subsection.

"(7) FUNDING.—For purposes of carrying out pilot programs under this subsection, the Secretary shall provide for the transfer, from the Federal Hospital Insurance Trust Fund under section 1817 and the Federal Supplementary Medical Insurance Trust Fund under section 1841, in such proportion as the Secretary determines appropriate, of such sums as the Secretary determines necessary, to the Centers for Medicare & Medicaid Services Program Management Account.

"(8) WAIVER OF BUDGET NEUTRALITY.—The Secretary shall not require that pilot programs under this subsection be budget neutral with respect to expenditures under this title.

"(c) DETERMINATIONS.—

"(1) BY THE COMMISSIONER OF SOCIAL SECURITY.—For purposes of this section, the Commissioner of Social Security, in consultation with the Secretary, and using the cost allocation method prescribed in section 201(g), shall determine whether individuals are environmental exposure affected individuals.

"(2) BY THE SECRETARY.—The Secretary shall determine eligibility for pilot programs under subsection (b).

"(d) EMERGENCY DECLARATION DEFINED.—For purposes of this section, the term 'emergency declaration' means a declaration of a public health emergency under section 104(a) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980.

JN9

124 STAT. 956          PUBLIC LAW 111–148—MAR. 23, 2010

"(e) ENVIRONMENTAL EXPOSURE AFFECTED INDIVIDUAL DEFINED.—

"(1) IN GENERAL.—For purposes of this section, the term 'environmental exposure affected individual' means—

"(A) an individual described in paragraph (2); and

"(B) an individual described in paragraph (3).

"(2) INDIVIDUAL DESCRIBED.—

"(A) IN GENERAL.—An individual described in this paragraph is any individual who—

"(i) is diagnosed with 1 or more conditions described in subparagraph (B);

"(ii) as demonstrated in such manner as the Secretary determines appropriate, has been present for an aggregate total of 6 months in the geographic area subject to an emergency declaration specified in subsection (b)(2)(A), during a period ending—

"(I) not less than 10 years prior to such diagnosis; and

"(II) prior to the implementation of all the remedial and removal actions specified in the Record of Decision for Operating Unit 4 and the Record of Decision for Operating Unit 7;

"(iii) files an application for benefits under this title (or has an application filed on behalf of the individual), including pursuant to this section; and

"(iv) is determined under this section to meet the criteria in this subparagraph.

"(B) CONDITIONS DESCRIBED.—For purposes of subparagraph (A), the following conditions are described in this subparagraph:

"(i) Asbestosis, pleural thickening, or pleural plaques as established by—

"(I) interpretation by a 'B Reader' qualified physician of a plain chest x-ray or interpretation of a computed tomographic radiograph of the chest by a qualified physician, as determined by the Secretary; or

"(II) such other diagnostic standards as the Secretary specifies,

except that this clause shall not apply to pleural thickening or pleural plaques unless there are symptoms or conditions requiring medical treatment as a result of these diagnoses.

"(ii) Mesothelioma, or malignancies of the lung, colon, rectum, larynx, stomach, esophagus, pharynx, or ovary, as established by—

"(I) pathologic examination of biopsy tissue;

"(II) cytology from bronchioalveolar lavage; or

"(III) such other diagnostic standards as the Secretary specifies.

"(iii) Any other diagnosis which the Secretary, in consultation with the Commissioner of Social Security, determines is an asbestos-related medical condition, as established by such diagnostic standards as the Secretary specifies.

"(3) OTHER INDIVIDUAL DESCRIBED.—An individual described in this paragraph is any individual who—

JN10

PUBLIC LAW 111–148—MAR. 23, 2010          124 STAT. 957

"(A) is not an individual described in paragraph (2);

"(B) is diagnosed with a medical condition caused by the exposure of the individual to a public health hazard to which an emergency declaration applies, based on such medical conditions, diagnostic standards, and other criteria as the Secretary specifies;

"(C) as demonstrated in such manner as the Secretary determines appropriate, has been present for an aggregate total of 6 months in the geographic area subject to the emergency declaration involved, during a period determined appropriate by the Secretary;

"(D) files an application for benefits under this title (or has an application filed on behalf of the individual), including pursuant to this section; and

"(E) is determined under this section to meet the criteria in this paragraph.".

(b) PROGRAM FOR EARLY DETECTION OF CERTAIN MEDICAL CONDITIONS RELATED TO ENVIRONMENTAL HEALTH HAZARDS.—Title XX of the Social Security Act (42 U.S.C. 1397 et seq.), as amended by section 5507, is amended by adding at the end the following:

"SEC. 2009. PROGRAM FOR EARLY DETECTION OF CERTAIN MEDICAL CONDITIONS RELATED TO ENVIRONMENTAL HEALTH HAZARDS.

42 USC 1397h.

"(a) PROGRAM ESTABLISHMENT.—The Secretary shall establish a program in accordance with this section to make competitive grants to eligible entities specified in subsection (b) for the purpose of—

"(1) screening at-risk individuals (as defined in subsection (c)(1)) for environmental health conditions (as defined in subsection (c)(3)); and

"(2) developing and disseminating public information and education concerning—

"(A) the availability of screening under the program under this section;

"(B) the detection, prevention, and treatment of environmental health conditions; and

"(C) the availability of Medicare benefits for certain individuals diagnosed with environmental health conditions under section 1881A.

"(b) ELIGIBLE ENTITIES.—

"(1) IN GENERAL.—For purposes of this section, an eligible entity is an entity described in paragraph (2) which submits an application to the Secretary in such form and manner, and containing such information and assurances, as the Secretary determines appropriate.

"(2) TYPES OF ELIGIBLE ENTITIES.—The entities described in this paragraph are the following:

"(A) A hospital or community health center.

"(B) A Federally qualified health center.

"(C) A facility of the Indian Health Service.

"(D) A National Cancer Institute-designated cancer center.

"(E) An agency of any State or local government.

"(F) A nonprofit organization.

"(G) Any other entity the Secretary determines appropriate.

JN11

"(c) DEFINITIONS.—In this section:

"(1) AT-RISK INDIVIDUAL.—The term 'at-risk individual' means an individual who—

"(A)(i) as demonstrated in such manner as the Secretary determines appropriate, has been present for an aggregate total of 6 months in the geographic area subject to an emergency declaration specified under paragraph (2), during a period ending—

"(I) not less than 10 years prior to the date of such individual's application under subparagraph (B); and

"(II) prior to the implementation of all the remedial and removal actions specified in the Record of Decision for Operating Unit 4 and the Record of Decision for Operating Unit 7; or

"(ii) meets such other criteria as the Secretary determines appropriate considering the type of environmental health condition at issue; and

"(B) has submitted an application (or has an application submitted on the individual's behalf), to an eligible entity receiving a grant under this section, for screening under the program under this section.

"(2) EMERGENCY DECLARATION.—The term 'emergency declaration' means a declaration of a public health emergency under section 104(a) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980.

"(3) ENVIRONMENTAL HEALTH CONDITION.—The term 'environmental health condition' means—

"(A) asbestosis, pleural thickening, or pleural plaques, as established by—

"(i) interpretation by a 'B Reader' qualified physician of a plain chest x-ray or interpretation of a computed tomographic radiograph of the chest by a qualified physician, as determined by the Secretary; or

"(ii) such other diagnostic standards as the Secretary specifies;

"(B) mesothelioma, or malignancies of the lung, colon, rectum, larynx, stomach, esophagus, pharynx, or ovary, as established by—

"(i) pathologic examination of biopsy tissue;

"(ii) cytology from bronchioalveolar lavage; or

"(iii) such other diagnostic standards as the Secretary specifies; and

"(C) any other medical condition which the Secretary determines is caused by exposure to a hazardous substance or pollutant or contaminant at a Superfund site to which an emergency declaration applies, based on such criteria and as established by such diagnostic standards as the Secretary specifies.

"(4) HAZARDOUS SUBSTANCE; POLLUTANT; CONTAMINANT.—The terms 'hazardous substance', 'pollutant', and 'contaminant' have the meanings given those terms in section 101 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (42 U.S.C. 9601).

"(5) SUPERFUND SITE.—The term 'Superfund site' means a site included on the National Priorities List developed by the President in accordance with section 105(a)(8)(B) of the

**JN12**

Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (42 U.S.C. 9605(a)(8)(B)).

→ "(d) HEALTH COVERAGE UNAFFECTED.—Nothing in this section shall be construed to affect any coverage obligation of a governmental or private health plan or program relating to an at-risk individual.

"(e) FUNDING.—

"(1) IN GENERAL.—Out of any funds in the Treasury not otherwise appropriated, there are appropriated to the Secretary, to carry out the program under this section—

"(A) $23,000,000 for the period of fiscal years 2010 through 2014; and

"(B) $20,000,000 for each 5-fiscal year period thereafter.

"(2) AVAILABILITY.—Funds appropriated under paragraph (1) shall remain available until expended.

"(f) NONAPPLICATION.—

"(1) IN GENERAL.—Except as provided in paragraph (2), the preceding sections of this title shall not apply to grants awarded under this section.

"(2) LIMITATIONS ON USE OF GRANTS.—Section 2005(a) shall apply to a grant awarded under this section to the same extent and in the same manner as such section applies to payments to States under this title, except that paragraph (4) of such section shall not be construed to prohibit grantees from conducting screening for environmental health conditions as authorized under this section.".

SEC. 10324. PROTECTIONS FOR FRONTIER STATES.

(a) FLOOR ON AREA WAGE INDEX FOR HOSPITALS IN FRONTIER STATES.—

(1) IN GENERAL.—Section 1886(d)(3)(E) of the Social Security Act (42 U.S.C. 1395ww(d)(3)(E)) is amended—

(A) in clause (i), by striking "clause (ii)" and inserting "clause (ii) or (iii)"; and

(B) by adding at the end the following new clause:

"(iii) FLOOR ON AREA WAGE INDEX FOR HOSPITALS IN FRONTIER STATES.—

"(I) IN GENERAL.—Subject to subclause (IV), for discharges occurring on or after October 1, 2010, the area wage index applicable under this subparagraph to any hospital which is located in a frontier State (as defined in subclause (II)) may not be less than 1.00.

"(II) FRONTIER STATE DEFINED.—In this clause, the term 'frontier State' means a State in which at least 50 percent of the counties in the State are frontier counties.

"(III) FRONTIER COUNTY DEFINED.—In this clause, the term 'frontier county' means a county in which the population per square mile is less than 6.

"(IV) LIMITATION.—This clause shall not apply to any hospital located in a State that receives a non-labor related share adjustment under paragraph (5)(H).".

# Social Security Administration
# Retirement, Survivors and Disability Insurance
Notice of Disapproved Claim

SOCIAL SECURITY
SUITE D
275 CORPORATE DR
KALISPELL, MT 59901-3498
Date: June 14, 2023
BNC#: 23D1826C41800
TOP

TROY, MT 59935-

Dear

You are not entitled to Medicare hospital and medical insurance based on exposure to a public health hazard in an area subject to an emergency declaration. To get this type of Medicare coverage, you must meet both medical and presence rules. You do not meet the medical rule.

- To meet the medical rule, you must be diagnosed with a specific medical condition resulting from exposure to a public health hazard in an area subject to an emergency declaration.

- To meet the presence rule, you must be in an area subject to an emergency declaration for at least 6 months. The 6 months must occur at least 10 years before your medical diagnosis.

## Do You Disagree With The Decision?

If you disagree with this decision, you have the right to appeal. We will review your case and consider any new facts you have. A person who did not make the first decision will decide your case. We will correct any mistakes. We will review those parts of the decision which you believe are wrong and will look at any new facts you have. We may also review those parts which you believe are correct and may make them unfavorable or less favorable to you.

- You have 60 days to ask for an appeal.

- The 60 days start the day after you get this letter. We assume you got this letter 5 days after the date on it unless you show us that you did not get it within the 5-day period.

- You must have a good reason for waiting more than 60 days to ask for an appeal.

- You can file an appeal with any Social Security office. You must request the appeal in writing. Please use our "Request for Reconsideration" form, SSA-561-U2, which is available on our website at www.socialsecurity.gov on the Internet. You can also contact us by phone, by mail, or come into the office to obtain the form. If you need assistance, we can help you fill out the form.

See Next Page

**JN14**

23D1826C41800                                                          Page 2 of 2

### If You Want Help With Your Appeal

You may choose to have a representative help you. We will work with this person just as we would work with you. If you decide to have a representative, you should find one quickly so that person can start preparing your case.

Many representatives charge a fee only if you receive benefits. Others may represent you for free. Usually, your representative may not charge a fee unless we approve it. Your local Social Security office can give you a list of groups that can help you find a representative.

If you get a representative, you or that person must notify us in writing. You may use our Form SSA-1696 Appointment of Representative. Any local Social Security office can give you this form.

If you have any questions about Medicare eligibility based on exposure to a public health hazard, please call us toll-free at 1-888-482-3128 or write to us at:

> 275 Corporate Drive
> Ashley Square Mall
> Suite D
> Kalispell, MT 59901

### Suspect Social Security Fraud?

If you suspect Social Security Fraud, please visit https://oig.ssa.gov/report or call the Inspector General's Fraud Hotline at 1-800-269-0271 (TTY 1-866-501-2101).

### Need more help?

1. Visit www.ssa.gov for fast, simple, and secure online service.

2. Call us at 1-800-772-1213, weekdays from 8:00 am to 7:00 pm. If you are deaf or hard of hearing, call TTY 1-800-325-0778. Please mention this letter when you call.

3. You may also call your local office at 888-487-0150.

> SOCIAL SECURITY
> SUITE D
> 275 CORPORATE DR
> KALISPELL, MT 59901-3498

How are we doing? Go to www.ssa.gov/feedback to tell us.

*Social Security Administration*

**JN15**

# Environmental Health Hazards Checklist

## Medicare Coverage for Individuals Exposed to Environmental Health Hazards

| Step 1: Identify the individual. (Completed by the field office.) | | |
|---|---|---|
| First Name – Middle Initial – Last Name | | |
| Social Security Number | | Date of Birth |

### Step 2: Identify the asbestos-related condition(s) and its date of diagnosis.
(Completed by the provider.)

*Check the box next to the diagnosed impairment(s) and print the date of diagnosis.*

OUTSIDE READ ONLY

| | Impairment | Diagnosis Code | Minimum Medical Evidence Required |
|---|---|---|---|
| ☒ | Asbestosis | 5010 | Interpretation by a B reader qualified physician of a plain chest x-ray or interpretation of computed tomography radiograph of the chest by a qualified physician |
| ☐ | Pleural thickening Pleural plaques | 5010 | Interpretation by a B reader qualified physician of a plain chest x-ray or interpretation of computed tomography radiograph of the chest by a qualified physician |
| ☐ | Mesothelioma | 1630 | Established by pathologic examination of biopsy tissue or cytology from bronchioalveolar lavage or bronchoscopy report |
| ☐ | Malignancy of the lung | 1620 | Established by pathologic examination of biopsy tissue, cytology from bronchioalveolar lavage or bronchoscopy report |
| ☐ | Malignancy of the colon | 1530 | Established by pathologic examination of biopsy tissue or cytology from bronchioalveolar lavage |
| ☐ | Malignancy of the rectum | 1530 | Established by pathologic examination of biopsy tissue or cytology from bronchioalveolar lavage |
| ☐ | Malignancy of the larynx | 1950 | Established by pathologic examination of biopsy tissue or cytology from bronchioalveolar lavage |
| ☐ | Malignancy of the stomach | 1510 | Established by pathologic examination of biopsy tissue or cytology from bronchioalveolar lavage |
| ☐ | Malignancy of the esophagus | 1500 | Established by pathologic examination of biopsy tissue or cytology from bronchioalveolar lavage |
| ☐ | Malignancy of the pharynx | 1950 | Established by pathologic examination of biopsy tissue or cytology from bronchioalveolar lavage |
| ☐ | Malignancy of the ovary | 1830 | Established by pathologic examination of biopsy tissue or cytology from bronchioalveolar lavage |
| ☐ | Individual does not have an impairment listed above | | |
| | Date of Diagnosis: | 5/9/2023 (DATE OF OUTSIDE READ) | |

### Step 3: Identify presence in Lincoln County, Montana.
(Completed by the provider.)

| This individual was present in Lincoln County, Montana, during the following time period(s): | 1967-Current |
|---|---|

Do your records dated prior to March 23, 2010, indicate the individual was present in Lincoln County, Montana, for a total of at least 6 months during a period ending 10 years or more before the date of his or her diagnosis of the impairment(s) checked above? ☐ Yes      ☒ No (SSA will develop presence.)

| Printed Name | Physician's Signature | Date |
|---|---|---|
| Karen Lee Morrisette, MD | *Karen Lee Morrisette MD* | 5/30/2023 |

13 OF 16

6/9/2022
Date

To Whom It May Concern:

My name is _____ _____, I am not an immediate relative and I can attest to 1960
knowing _____ spent time in Lincoln County Montana between the years _____
and 2022 (which was at least 10 years ago) . To my knowledge, the duration of this person's time
spent in Lincoln County exceeded a total amount of six months.

If you have any questions regarding the authenticity of this statement I can be reached at the following
telephone number _:

Sincerely,

_____
Name

_____
Address

Libby, MT 59923
City, State, Zip

14 OF 16

6/9/2022
Date

To Whom It May Concern:

My name is _____ I am not an immediate relative and I can attest to
knowing _____ spent time in Lincoln County Montana between the years _9 3_
and _2022_ (which was at least 10 years ago) . To my knowledge, the duration of this person's time
spent in Lincoln County exceeded a total amount of six months.

If you have any questions regarding the authenticity of this statement I can be reached at the following
telephone number _____.

Sincerely,

_____
Name

Address

_Libby MT. 59923_
City, State, Zip

½ of 16

DATE OF IMAGE 03/24/2023      READER TALLAKSEN

WORKER ID      SET ID

Image quality   1   **X**   2   3   If not grade 1, give reason _____

**LUNG**

**1A. ARE THERE ANY LUNG ABNORMALITIES PRESENT?**   NO   **YES**   IF NO GO TO #7A

**1B. ARE THERE ANY WELL DEFINED OPACITIES PRESENT?**   NO   YES   IF NO GO TO #2

| | Predominant Size | | | Zones/Profusion | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | No | Yes | (Choose one) | | R | | | | | L | | |
| P = 1.5mm | | | | U | 0 | 1 | 2 | 3 | 0 | 1 | 2 | 3 |
| Q = 1.5-3mm | | | | M | 0 | 1 | 2 | 3 | 0 | 1 | 2 | 3 |
| R = 3-10mm | | | | L | 0 | 1 | 2 | 3 | 0 | 1 | 2 | 3 |

SUM GRADE

**2. ARE THERE ANY IRREGULAR AND/OR LINEAR OPACITIES PRESENT?**   NO   **Y66**   IF NO GO TO #3

| | Predominant Type | | | Grade | R | | | | | L | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | No | Yes | (Choose one) | | | | | | | | | |
| Intralobular | | X | | U | **X** | 1 | 2 | 3 | **X** | 1 | 2 | 3 |
| Interlobular | | X | | M | 0 | **X** | 2 | 3 | **X** | 1 | 2 | 3 |
| Reticular | | X | | L | 0 | **X** | 2 | 3 | **X** | 1 | 2 | 3 |

**2** SUM GRADE

**3. GROUND GLASS OPACITY PRESENT?**   NO   YES   IF NO GO TO #4

| Grade | R | | | | L | | | |
|---|---|---|---|---|---|---|---|---|
| U | 0 | 1 | 2 | 3 | 0 | 1 | 2 | 3 |
| M | 0 | 1 | 2 | 3 | 0 | 1 | 2 | 3 |
| L | 0 | 1 | 2 | 3 | 0 | 1 | 2 | 3 |

1 = 25%
2 = 25%-50%
3 = 50%

**4. IS THERE ANY HONEYCOMBING PRESENT?**   **NO**   YES   IF NO GO TO #5

| Grade | R | | | | L | | | |
|---|---|---|---|---|---|---|---|---|
| U | **X** | 1 | 2 | 3 | **X** | 1 | 2 | 3 |
| M | 0 | 1 | **X** | 3 | **X** | 1 | 2 | 3 |
| L | **X** | 1 | 2 | 3 | **X** | 1 | 2 | 3 |

1 = 25%
2 = 25%-50%
3 = 50%

**5. EMPHYSEMA PRESENT?**   NO   YES   IF NO GO TO #6

| Grade | R | | | | L | | | |
|---|---|---|---|---|---|---|---|---|
| U | 0 | 1 | 2 | 3 | 0 | 1 | 2 | 3 |
| M | 0 | 1 | 2 | 3 | 0 | 1 | 2 | 3 |
| L | 0 | 1 | 2 | 3 | 0 | 1 | 2 | 3 |

1 = 25%
2 = 25%-50%
3 = 50%

**6. ARE THERE LARGE OPACITIES PRESENT?**   **0** A   B   C

| Zones | R | L |
|---|---|---|
| U | | |
| M | | |
| L | | |

**PLEURA**

**7A. ARE THERE ANY PLEURAL ABNORMALITIES PRESENT?**   **NO**   YES   IF NO GO TO #9

Extent/width

| | | R | | | | L | | | |
|---|---|---|---|---|---|---|---|---|---|
| L | 0 | 1 | 2 | 3 | 0 | 1 | 2 | 3 |
| | 0 | a | b | c | 0 | a | b | c |
| SI | 0 | 1 | 2 | 3 | 0 | 1 | 2 | 3 |
| | 0 | a | b | c | 0 | a | b | c |
| I | 0 | 1 | 2 | 3 | 0 | 1 | 2 | 3 |
| | 0 | a | b | c | 0 | u | b | c |

| | No | Yes | Predominant Type (choose one) |
|---|---|---|---|
| W | parietal type | | | |
| | visceral type | | | |
| M | mediastinum | | | |
| D | diaphragm | | | |

**7B. IS THERE ROUNDED ATELECTASIS?**   0   1   2   3

**8A. ARE ANY PLEURAL CALCIFICATIONS PRESENT?**   NO   YES   IF NO GO TO #9    **8B. LOCATION**   0   W   M   D

**9. SYMBOLS**

0   AX   BR   **BU**   HU   CA   6G   CV   DI   DO   EF   ES   FP   FR   HI   ME   MP   OD   PU   RA   **X**   TB

**10A. ARE NON-CALCIFIED NODULES PRESENT?**   NO   **YES**   IF NO GO TO #11    **10B. NO. OF NODULES PRESENT**   **2**    **10C. MAXIMUM DIAMETER OF NODULES** mm   **4**

**11. OTHER COMMENTS** _____

**12. READER INITIALS:** RJT

**DATE OF READING** 5/9/23    **4-DIGIT IMAGE ID, AS READ FROM IMAGE (NOT FROM LABEL)** 1960

| FOR SITE USE ONLY | | |
|---|---|---|
| SITE EDIT | SITE FAIL | SITE PASS |
| SCANNED | RECV'D | KEYED |

16 OF 16

Name:      DOB:      **JN19**      Date